· COOPER *v.* TOWNSEND *et al.*

(*Supreme Court, General Term, First Department.* February 13, 1891.)

1. RES ADJUDICATA—MONEY HELD TO PLAINTIFF'S USE—PARTIES—ATTACHMENT.
Under an agreement between plaintiff and the H. Bank, a foreign corporation, which had made advances on bills of lading of hemp shipped to plaintiff, money, claimed by both, part of the proceeds of the hemp, was deposited with a trust company, to be held subject to the judgment in an action to determine the rights of the parties. In such action judgment was rendered for plaintiff that, after payment of a small part of the deposit to the H. Bank, the balance be paid to plaintiff. Pending an appeal by the H. Bank, further agreements were made by it and plaintiff, under which such balance was paid to the H. Bank, and, to secure the repayment thereof to plaintiff on an affirmance of the judgment, the certified check of the H. Bank for the amount of such balance, drawn on the N. Bank, was deposited with the cashier of the latter bank, to be paid to the order of P. and T., or, in the event of their refusal to indorse the check, the cashier was to apply the fund in accordance with the judgment on appeal. The judgment was affirmed, with an addition that it should be "without prejudice to any superior right of a creditor or assignee" of the shippers of the hemp. It appeared that this was added because one of the grounds of the judgment for plaintiff was that the shippers were indebted to him in an amount exceeding the sum awarded to him, and it was not intended to foreclose the rights of any other creditors of the shippers except the H. Bank. T. having refused to indorse the check, plaintiff sued P. and T., the cashier of the N. Bank, and that bank, to compel the delivery and indorsement of the check, and for judgment against the cashier and the N. Bank for the amount of it; and actions were brought by the H. Bank and other creditors of the shippers of the hemp, in which attachments were levied on the check. *Held,* that plaintiff might recover in his action, without making such attaching creditors parties, as the right of the H. Bank to the money was already adjudged, and the mere service of an attachment by the other creditors did not authorize the N. Bank to hold, as against plaintiff, the money, which, by the judgment, became his property, the N. Bank holding it as his trustee.

2. PRINCIPAL AND AGENT—LIABILITY OF BANK.
    The acts of the cashier of the N. Bank were in his capacity as such, and were binding on the bank.
3. TAXATION OF COSTS.
    T. having assented to and acted upon the agreements between plaintiff and the H. Bank, with knowledge, as agent of the H. Bank, of all the transactions between them, the fact that he was not a party to the last agreement, personally, was no reason why costs and an allowance should not be awarded against him, costs being discretionary in such equitable action.
4. INTEREST—DEMAND.
    In such form of action, plaintiff could not recover interest, as against the N. Bank, from the time of his demand on the bank, as it was not in default until the check was presented duly indorsed by P. and T.

Appeals from special term, New York county.

Action by William B. Cooper, Jr., against Alfred M. Townsend, James N. Platt, David Palmer, and the National City Bank. Defendants appeal from a judgment for plaintiff entered on trial by the court without a jury, and plaintiff also appeals from the judgment, so far as it fails to allow him interest claimed by him.

Argued before VAN BRUNT, P. J., and BARTLETT and BARRETT, JJ.

*Platt & Bowers,* (*John M. Bowers,* of counsel,) for plaintiff.    *Redfield & Redfield,* (*Amasa A. Redfield,* of counsel,) for defendants.

VAN BRUNT, P. J. It appeared from the evidence in this case that the Hong Kong & Shanghai Banking Company was a foreign corporation, and that the plaintiff herein is a commission merchant doing business in the city of New York; that the firm of Martin, Dyce & Co. were merchants doing business at Manilla; that the firm of Martin, Turner & Co. were bankers doing business at Glasgow, Scotland, the same persons composing the two last-mentioned firms. In September, 1883, at the city of New York, the plaintiff sold 4,000 bales of hemp to certain merchants in the city of New York, to be shipped from Manilla during the month of October and or November, 1883, to be paid for on arrival at the port of New York. Immediately after making said sales the plaintiff notified the firm of Martin, Dyce & Co. thereof, and that he had sold 4,000 bales for their account. In October, 1883, Martin, Dyce & Co. shipped 4,000 bales of hemp, and received from the master of the vessel bills of lading therefor in the usual form, declaring that the same was deliverable at the port of New York to the order of Martin, Dyce & Co. Thereafter said firm indorsed said bills in blank, and transferred them to said banking company, who on the faith thereof advanced to said firm over $18,000, and drew bills of exchange therefor on the firm of Martin, Turner & Co., of Glasgow. These bills were subsequently accepted by Martin, Turner & Co., and became due in May and June. At the time of such advances the banking company had no knowledge or notice of the sale of said hemp. Thereafter said firm of Martin, Dyce & Co. notified the plaintiff that they had shipped the 4,000 bales, which notification reached him in December, 1883. In February, 1884, said firms of Martin, Dyce & Co. and Martin, Turner & Co. suspended payment, and became bankrupt, leaving unpaid the said bills of exchange. Upon the arrival of the hemp at the port of New York the banking company took possession thereof as the transferee of said bills of lading. In March, 1884, the banking company wrote to the plaintiff, and inquired whether this hemp had been sold to arrive, and was informed by the plaintiff that it had been so sold for something like $4,000 over its then value, and that the contracts had been made in his name. Up to this time the plaintiff had no knowledge or notice that the banking company was at all interested in the hemp in question. A few days subsequently, in March, 1884, the plaintiff wrote to the banking company rescinding his previous notification, and claiming the right to treat the sales as for his own account. The banking company in no manner changed its position on the faith of the plaintiff's first no-

tification.    Between the time of the execution of the contracts for the sale of the 4,000 bales of hemp and the time of the arrival of the hemp shipped as above stated, the prices of hemp had largely fallen in the market, and at the latter time similar hemp could be purchased at a price $17,950 less than the price at which the aforesaid buyers had contracted to purchase the same of the plaintiff.    Upon the arrival of the hemp shipped as aforesaid the banking company demanded of the plaintiff that he should take the hemp, and deliver it to the buyers, under the aforesaid contracts of sale, and cause the proceeds thereof, after deducting his commissions, to be paid to them to the full extent of their advances on the pledge of the hemp.    The plaintiff, however, claimed that he had a right to purchase other similar hemp in the market, and deliver the same to the buyers in fulnlment of his contracts, and receive the profit of $17,950, and apply it in the reduction of the indebtedness to him of Martin, Turner & Co. and Martin, Dyce & Co., and the plaintiff refused to accede to the demand of the banking company.    At this time the said firms were largely indebted to the plaintiff, exceeding the amount of said profits, and such indebtedness still exists, and arose out of transactions between him and said firms, in which he acted for them as a commission merchant.    Thereupon the banking company and the plaintiff, for their mutual benefit and convenience, in order that the question might be completely determined as to their legal rights, entered into an agreement by which it was mutually agreed, among other things, that the plaintiff should cause the 4,000 bales of hemp shipped from Manilla, as aforesaid, to be delivered to the purchasers under said contracts, and the net proceeds, after deducting his commissions and expenses, and the sum of $17,950, to be paid over to the banking company on account of its advances on the faith of said hemp; and that said sum of $17,950 should be deposited with the Union Trust Company, to be held by it subject to the judgment of a court to be made in an action to be brought to determine the rights of the parties thereto.    This sum of $17,950 was fixed as the amount of profits which the said plaintiff could have realized on the said hemp contracts had he filled his contracts with similar hemp, which it is assumed he could have purchased in the market.    By said agreement the question to be determined in such action was whether he had the right, as against the banking company, to deliver to the purchasers under the contracts aforesaid other hemp than that received from Martin, Dyce & Co., of Manilla, to-wit, the hemp now shipped by the ship Polynesia, (that being the name of the ship in which said 4,000 bales were shipped,) but purchased by said Cooper in the New York market at some time after the said bankruptcy of said Martin, Turner & Co., and after the 1st of March, 1884; or whether, on the other hand, the said Hong Kong Banking Company was entitled to demand, as against the plaintiff, that the 4,000 bales of hemp received by the Polynesia from Manilla, aforesaid, should be delivered under and in fulfillment of said contracts of sale, and the proceeds thereof applied in satisfaction of their advances against said hemp.

In pursuance of this agreement the plaintiff took charge of the hemp, delivered it to his vendees, and received the profits, retaining his commissions and expenses, depositing in the Union Trust Company $17,950, and paying over the balance to the banking company.    This deposit with the Union Trust Company was to be held in their hands subject to the joint order of James N. Platt and Alfred M. Townsend, or to be paid over in pursuance of the judgment of the court to be made in an action brought under said agreement.    An action was brought in the supreme court to determine the question reserved in said agreement, in which action evidence was offered establishing the foregoing facts, and the circumstances under which the plaintiff was doing business with and for the firm of Martin, Dyce & Co., and which resulted in a judgment in favor of the plaintiff to the effect that said Platt & Townsend do forthwith collect from the Union Trust Company the $17.950 deposited with

it as aforesaid, with all interest thereon, and pay to the banking company the sum of $3,367.35, and that they then forthwith pay the entire balance of said deposit, with all accumulations of interest thereon, to the plaintiff. The banking company, intending to appeal to the general term from the aforesaid judgment in so far as it directed the payment of said balance to the plaintiff, entered into an agreement with the plaintiff by which, after reciting the recovery of the judgment and their intention to appeal, and that the banking company was desirous of being in possession of said balance pending said appeal, and that the plaintiff was willing that it should hold the same on duly securing the repayment thereof to him on his securing the affirmance of the said judgment, or otherwise being adjudged to be entitled to the same, it was agreed that said Platt & Townsend should pay the entire balance, to-wit, the sum of $14,665.82, to the banking company, and the banking company should deliver its check for the sum of $14,346.50 to the order of said Platt & Townsend, which should be duly certified by the Bank of Commerce, and should be held by the cashier of the Bank of Commerce until the general term should render its judgment in that action. The bank, however, was at any time to pay said check to the joint order of said Platt & Townsend, or, in the event of said Platt & Townsend neglecting or refusing to indorse said check, then the said cashier was to dispose of said check in accordance with the judgment rendered on said appeal. It was further agreed that said cashier should deliver a certificate that he had received and held said check in accordance with said agreement. Thereupon said banking company delivered its check to the order of Platt & Townsend for $14,346.50 to the cashier of the Bank of Commerce, which was duly certified by the Bank of Commerce. Thereafter the banking company having changed its account from said Bank of Commerce to the defendant the National City Bank, and at the request of said banking company, the check so drawn upon said Bank of Commerce was indorsed by said Platt & Townsend and surrendered; and another agreement was entered into between the plaintiff and the banking company, whereby, after reciting the deposit of the check, and that the banking company was about to change its account from the Bank of Commerce to the National City Bank, it was further agreed that a certified check of the banking company, drawn upon the National City Bank, should be deposited with and held by the cashier of said bank in place of the check held by the cashier of the Bank of Commerce, subject, *mutatis mutandis*, to each and every of the conditions of the aforesaid agreement; and whereby it was further agreed that, in the event of the neglect or refusal of either Platt or Townsend, or their successors or legal representatives, to indorse said check in order that the amount thereof might be applied in accordance with the judgment which it is designed to protect, the said cashier of the National City Bank should, without indorsement, on demand of the party in whose favor judgment should be entered, cash the same, and apply the fund in accordance with such judgment. Thereupon the said banking company drew its check on the National City Bank for the sum of $14,346.50 in favor of the defendants Platt & Townsend, and the National City Bank duly certified the same, and the same was delivered to and still remains in the custody of said cashier, who executed and delivered to the plaintiff a certificate whereby he acknowledged the receipt of the check above mentioned, and also of copies of the above agreement, and in which he stated that he would hold the check in accordance with the agreement as requested. Subsequently the said judgment was affirmed by the general term, with costs to the respondents, the said court adding to said judgment the following clause: "But this judgment is without prejudice to any superior right of a creditor or assignee of Martin, Turner & Co. and Martin, Dyce & Co., if any such exist." An appeal was taken to the court of appeals, in which court the judgment of the general term was affirmed. 21 N. E. Rep. 994. Immediately upon the general term's affirmance, and pending the appeal to the

court of appeals, the plaintiff commenced the present action against Platt & Townsend, Palmer, the cashier of the National City Bank, and the National City Bank, to compel the delivery of the check in question by the cashier of the National City Bank to such person as should be named by the court; that Platt & Townsend be adjudged to indorse the same, and that when so indorsed the check be delivered to the plaintiff; and for judgment against the cashier of the National City Bank and the National City Bank for the amount of such check, with interest. In the mean time the banking company, as a creditor of Martin, Turner & Co., brought an action, and obtained and attempted to levy an attachment upon the check in the hands of Palmer, and upon the fund in the said bank which the check represented, and gave notice to Platt & Townsend not to indorse and deliver the check. The plaintiff himself also got out an attachment, and so did the firm of Kidder, Peabody &. Co. The defendant Townsend answered to this action separately, setting up the pendency of the appeal in the court of appeals, and also setting up the levy of the attachment, and the notice by the attaching creditors that he should not indorse the check; and that the said banking company, Martin, Turner & Co., Martin, Dyce & Co., and all the attaching creditors of said firms, were necessary parties.

The defendants Palmer and the City National Bank answered upon their own behalf that the check was not indorsed by either Townsend or Platt, setting up the granting of the attachment, and that a copy had been served upon them with the usual notice, and that the check and the money represented by it was not the property of the plaintiff, and that they were under no legal obligation to deliver the check or pay the money to the plaintiff, so long as said attachments are a lien thereon.

Upon the trial of the issues thus presented, proof of the foregoing facts having been offered, at the close of the testimony a motion was made by the defendants Palmer and the City Bank that the Kong Kong Banking Company, and the attachment creditors and debtors, be brought in, and on behalf of said bank it was also moved that the complaint should be dismissed on the ground that it contains no cause of action against the defendant; that it was not a party to the agreement; that it entered into no contract with any one except to pay its certified check when indorsed according to the terms of the check; and that there was no evidence that it was not ready to do so. The defendant Palmer moved to dismiss, upon the ground that if the action lies against the National City Bank it must be on the ground that Palmer acted only as the agent of the bank, and that an agent cannot be joined with the principal; and, *second*, on the theory that he individually is not shown to have violated any obligation or failed to perform any duty. The defendant Townsend moved to dismiss upon the ground that the banking company was a necessary party as attaching creditor; that the attachment debtors or their assignees were necessary parties; that the sheriff was a necessary party; and that the defendant Townsend was not a party to the agreement for the deposit, and not a party to the judgment awarding the fund to the plaintiff, and that upon the facts shown he was justified in refusing to indorse the check. The court found substantially the facts above stated, and gave judgment for the plaintiff in accordance with the prayer of the complaint, and from such judgment this appeal is taken.

The points presented upon this appeal are that upon the complaint, the evidence, and the findings at the trial it appeared that there was a defect of parties defendant; and that by a recovery in this action, without bringing in attaching creditors, the judgment of the general term and of the court of appeals is practically nullified; and, further, that the complaint states no cause of action against the National City Bank, and that it was not a necessary party. We are of opinion that none of these grounds are well taken. It appears from the foregoing statement of facts that, according to the judgment

of the court, this money belonged to the plaintiff in this action.  This judgment was rendered in an action in which his title to it by the only claimant who presented itself was challenged, and the judgment of the court was that the money should be paid to him.   But it is urged that this judgment was modified by the general term when it added to the judgment that it should be without prejudice to any superior right of a creditor or assignee of Martin, Turner & Co. and Martin, Dyce & Co., if any such existed.  It is apparent what the general term had in mind at the time this judgment was rendered in the action which was then before them.  It had been adjudicated that one of the grounds upon which the plaintiff should retain that money was because these firms were indebted to him in an amount exceeding the sum in his hands; and it was not intended to foreclose the right of any creditor of these firms except the banking company to challenge that part of the adjudication, and this was the whole scope of the modification of the judgment, and it apparently was so modified for no other purpose.   In this condition of affairs, how were the rights of the plaintiff and the banking company affected in respect to this fund?   As far as the banking company was concerned, it had been adjudged, as between it and the plaintiff, that he was entitled to the money.  It could not be allowed to come in and challenge this finding.  It had been found against them in another action, and by no process except by a reversal of that judgment could they get rid of that adjudication.   When that judgment was affirmed by the court of appeals, they had no more interest in the fund on deposit in the National City Bank to secure the plaintiff than if the money had never been in their possession.   They became absolute strangers to the transaction, and the plaintiff, instead of bringing an action in the form in which he did, might simply have brought an action against the National City Bank for money had and received to his use, and upon these facts, with that one defendant before the court, been entitled to recover.  But it is claimed that there was another attaching creditor, Kidder, Peabody & Co., who was not bound by that judgment, even if the bank was.  But the mere service of an attachment upon this money did not authorize the bank to hold it against its true owner.  If an attachment against John Jones is attempted to be levied against money in the bank to the credit of John Smith, such attachment forms no defense to the bank when John Smith calls for his money.  So the judgment having established as between the banking company and this plaintiff that this money on deposit was the plaintiff's, an attachment against somebody in Glasgow or Manilla could not affect his right to draw it.  It was necessary, before any party could have any claim against this property belonging to the plaintiff, to establish the fact, not that they were creditors of these foreign firms, but that the plaintiff in this action was their debtor.

To sustain the claim that the plaintiff is not entitled to draw that money, it would be necessary to hold that an attachment against these foreign firms could be levied against the private account of this plaintiff, the attaching creditors claiming that the plaintiff is indebted to the foreign firms; because, as has already been stated, by the terms of the agreement and the judgment of the court, this deposit of money became the property of the plaintiff, and the bank was holding it as his trustee.  Therefore, instead of the judgment rendered by this court nullifying the judgment of the general term and of the court of appeals, a contrary judgment would have absolutely reversed the adjudication which placed the title to this deposit in the plaintiff.  The relation between the plaintiff and these foreign firms was that of consignor and commission merchant.  The commission merchant had this fund in his hands, the proceeds of property which may have belonged to his consignors.  He claimed that his consignors were indebted to him in a larger amount than these funds in his hands.   How can any attaching creditor of the consignors prevent him from doing what he pleases with the money thus belonging to him, constructively in his possession, where it would have been actually, had these depos-

itaries of this money done their plain duty, and had not one of them at least willfully violated what he knew to be his trust?

But it is said that no case was made out against the City Bank, and therefore the complaint should have been dismissed as to it. The honesty of this claim is sufficiently characterized by the answers put in by the City Bank and its cashier. Those answers are: If the claim is urged against the bank, the contract is the cashier's; if the claim is urged against the cashier, then it is the bank's contract. And this was the position which these defendants, assumed upon this record, as shown by the grounds of the motion to dismiss the complaint. It is plain from the whole transaction that Palmer was acting in his representative capacity as cashier of the bank in these negotiations, because it was part and parcel of the agreement that the bank should pay these checks under certain circumstances, without the indorsement of Platt & Townsend, and certainly Palmer did not intend to agree individually to that condition. In agreeing to that condition of the agreement, which he did when he promised to hold this money pursuant to the provisions of the agreement, he was agreeing upon the part of the bank, as the representative of the bank, and not as an individual. It is probably true that as an individual he was not a necessary defendant. But it is far from true, in view of the position taken upon the trial, that he was an improper party. There was no method in which this agreement could be carried into effect was not Palmer acting for the bank, and the parties to the agreement, as well as Mr. Palmer, knew it perfectly. When he signed his name to that receipt as cashier, he intended to hold out that he was acting on behalf of the bank of which he was cashier. He intended to bind himself in his official capacity, and thereby to bind the bank; and, under all the circumstances of the case, it would seem that the claim that Palmer was acting as an individual has not the slightest foundation. It is urged that the court should not have granted costs and allowance against Townsend, for the reason that he was not a party personally to the agreement between the plaintiff in this action and the banking company. With all due deference to the learned counsel for the appellants, we think the record shows otherwise. It is true that individually he did not sign the agreements, and that it was only as agent of the banking company that he signed them. But he knew their contents. He knew what the trust was that was reposed in him. He assented to and acted upon these agreements when he indorsed the check drawn upon the Bank of Commerce, and he accepted the position of trustee in reference to the indorsement of this check when he, with personal knowledge as agent of the banking company, signed the agreement, and conducted the transactions and negotiations to the point where the money was deposited in the National City Bank to the credit of the banking company, and the check drawn to the order of himself and Platt, and given to the cashier of the National City Bank. He cannot say after having participated in this transaction from beginning to end, when he is called upon to perform the duty which he voluntarily undertook: "I did not sign the agreement, and therefore I can be guilty of as much bad faith as I please, without being required to pay any penalty therefor." The defendant was in a court of equity, and we do not think equity will tolerate for a moment any such position upon the part of a defendant who is subject to its jurisdiction. The court below was entirely right in imposing upon him the costs of this litigation, because he was the party who openly and defiantly resisted the decrees of this court. It is claimed upon the part of the plaintiff that he should be entitled to interest from the National City Bank from the time at which he originally made the demand. In this form of action, and in the form of the judgment which has been taken, we do not think this claim can be supported; because it seems to be assumed in the judgment in favor of the plaintiff that the only method of reaching this money is upon the surrender to the bank of this check duly indorsed by Townsend and Platt. Without adopting that

theory, we do not think, under the form of this action, that the National City Bank can be considered to be in default until the check is presented in that form.     That had not been done at the time of the commencement of this action, and consequently they were not liable for interest upon the deposit. Had the action, however, been brought against the National City Bank for money had and received to the use of the plaintiff, a different result might probably have ensued in respect to this question of interest; because by the terms of the agreement, to hold this deposit, it was bound to pay this money, if that judgment was affirmed which adjudicated the title to the money to be in the plaintiff, whether the check was indorsed or not.  Upon the whole case, therefore, we think that the judgment appealed from should be affirmed, with costs.    All concur.